UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS CADA, : | |
| Plaintiff, : | |
| : | |
| v. : | No. 5:16-cv-04832 |
| : | |
| EAST PENN MANUFACTURING : | |
| COMPANY, INC.; and : | |
| CONCERN COUNSELING SERVICES, : | |
| Defendants. : | |

**O P I N I O N**
**Concern's Motion for Summary Judgment, ECF No. 56 – Denied in part, Granted in part**
**East Penn's Motion for Summary Judgment, ECF No. 59 - Denied in part, Granted in part**

**Joseph F. Leeson, Jr.**                                                                                                                  **February 16, 2018**
**United States District Judge**

I.  **BACKGROUND**

Plaintiff Francis Cada initiated this action against his former employer Defendant East Penn Manufacturing Company, Inc. ("East Penn"), alleging that he was the victim of racial harassment at work for more than a year, that East Penn repeatedly refused to take corrective action and, instead, sent Cada for anger management counseling at Defendant Concern Counseling Services ("Concern"). Further, Cada alleges that when Concern included information in Cada's Back to Work Assessment that was critical of East Penn, East Penn instructed Concern to amend the report. Cada subsequently filed an Amended Complaint that also named Concern as a defendant. Both defendants have filed a Motion for Summary Judgment, seeking summary judgment on all claims. In the absence of any evidence to support Cada's claim under 42 U.S.C. § 1985, summary judgment is entered in favor of both Defendants

as to Count XI. Count XIII is dismissed as duplicative of Count XII and any allegations contained therein are also contained in Count XII. The Motions for Summary Judgment are denied in all other respects based on disputed issues of fact.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. FACTUAL BACKGROUND

Cada, who immigrated to the United States from the Philippines at age twelve, began employment with East Penn in 2004. East Penn acknowledges that Cada complained about race-based or national origin-based harassment in 2008, and that another harassing incident occurred in 2010. Snyder Dep. 188:3-190:19, Ex. A, ECF No. 60-1. Among the allegations of harassment in 2008, Cada reported that someone had written the word "chink" on his locker. Cada Dep. 56:3-57:16; 185:16-188:23, Ex. B. ECF No. 60-2; Snyder Dep. 79:16-89:6, 262:3-23. The focus of the instant action concerns conduct that occurred in 2014.

The parties agree that there was an incident at work between Cada and his co-worker, Justin Wisser, on February 26, 2014. There are disputed facts, however, as to what occurred before, during, and after the incident. Cada testified that for years he had been harassed by co-workers based on his race and national-origin. As to Wisser specifically, Cada testified that Wisser constantly called him dumb and "the short f\*\*king Asian," and told Cada that he did not belong at East Penn and that the company should let him go. *See* Cada Dep. 98:8-99:6. Cada testified that in late January, early February, he reported the racial harassment by Wisser to his supervisor Matt Gust. Cada Dep. 93:10-96:25. Cada testified that he informed Gust that Wisser was also racially harassing another co-worker by calling him "the N-word," in Cada's presence. *Id.* Cada stated that no one at East Penn followed up on his complaints. Cada Dep. 97:22-24. East Penn disputes that Cada reported the harassment to Gust in late January, early February 2014. *See* Brief Supp. Mot. Summ. J. 14, ECF No. 59-1.

According to Cada, on February 26, 2014, he finally "decided to stand up for [himself]" so he confronted Wisser. Cada Dep. 98:8-99:1. Cada testified that he informed Wisser that he was tired of the name-calling and that one day East Penn would hire someone unwilling to take

3
021618

the harassment that would "knock [Wisser] out." *Id.* Cada testified that Wisser replied, "What the f**k are you going to do about it? You're not doing anything." Cada Dep. 99:2-6. According to Cada, he told Wisser, "Well, we both get out at 1:45. So I don't know what you're talking about." Cada Dep. 99:7-9. As soon as his shift was over, however, Cada clocked out and went home. *Id.* Whether this is actually what happened on February 26, 2014, is disputed.

The parties agree that Snyder, the Personnel Director for East Penn, called Cada that afternoon because Wisser reported the incident to her. Cada Dep. 102:2-8; Snyder 244:11-245:1. It is also undisputed that Cada informed Snyder that Wisser had been harassing him. Cada Dep. 102:6-13; Snyder Dep. 245: 6-12. The parties disagree, however, as to whether Cada admitted to Snyder that he threatened Wisser. Cada Dep. 102:6-13 (Cada denied telling Wisser that he would beat him up.); Snyder Dep. 245:6-14 (Snyder testified that Cada told her that he was upset that Wisser was always giving him a hard time and that Cada "did admit to me that he made the threat."). Cada testified that Snyder told him not to have any contact with anyone at East Penn or he would be fired and that someone would contact him in a few days. Cada Dep. 115:12-17.

A day or two later, Cada met with the Plant Manager Bob Angstadt and the Personnel Coordinator Tom Danner. Cada Dep. 115:21-25; Danner Dep. 130:1-12, Ex. H-1, ECF No. 60-8. At that meeting, Cada reported that he was being harassed by Wisser. Cada Dep. 116:1-119:15; Danner Dep. 130:8-131:5 (Danner testified that when he met with Cada, Cada informed him that Wisser had called him a dumb and a "stupid Asian."). However, Cada testified that during the meeting he was accused of harassing a co-worker and of using the N-word, which Cada denied. *Id.* Cada testified that Danner said Cada was making up stories that were not true. Cada Dep. 121:4-122:18. Thereafter, on February 28, 2014, Cada was issued a three-day

4
021618

suspension and directed to undergo anger management counseling at Concern.[1]  Cada Dep. 98:8-99:6, 117:3-13; Snyder 111:13-112:5.

Cada treated with Adam Reinstein at Concern on March 3, 2014, and was deemed fit to return to work following his three-day suspension on March 4, 2014.  *See* EAP Records, Ex. P-2.  Cada had follow-up sessions at Concern on March 6, 2014, and March 13, 2014.  *Id.*  At the last session, Reinstein read to Cada portions of the Back to Work Assessment he had prepared for East Penn.  Reinstein Dep. 95:22-96:22, Ex. T, ECF No. 60-21.  Cada testified that he read the entire Assessment in his car after he left this session with Reinstein.  Cada Dep. 159:6-19, Ex. L-2, ECF No. 145.  The Assessment included information about the reason Cada was referred to Concern, Cada's descriptions of the harassing incidents that occurred at East Penn and his feelings about the same, Reinstein's determination that Cada was fit to return to work, as well as Reinstein's recommendation to East Penn regarding the harassment.  P-126, ECF No. 82-19

Unbeknownst to Cada, Reinstein submitted a revised version of the Assessment later in March.  Reinstein made the revisions at the request of East Penn; however, the parties dispute the level of control East Penn exerted.  According to emails dated March 17 and 18, 2014,[2] Snyder, on behalf of East Penn, requested three changes to Reinstein's Assessment.  First, Snyder asked that the Assessment indicate that Reinstein's recommendations assumed Cada's honesty in describing the events.  *See* Emails, P-11.  Second, Snyder requested that certain of Reinstein's statements, which she read as passing judgment on the work environment, be removed.  *Id.*  She

---

[1] Although Cada was disciplined immediately, Danner testified that no violation was issued against Wisser until April 2014 because he was investigating the incident.  Danner Dep. 144:4-10.

[2] These emails were between Snyder, Gina Manidis, with whom Snyder worked through the Employee Assistance Program, Jane Hoopes, the clinical supervisor at Concern, and Bob Harrop, East Penn's Vice President of Human Resources.  *See* Emails dated March 17-18, 2014, P-11, ECF No. 74-9.

clarified, however, that she had "no problem with it being listed as Francis's perceptions, but not as absolute fact." *Id.* Third, Snyder asked that the recommendation to East Penn to monitor its employees more closely be reworded because she believed that the recommendation assumed East Penn had not taken any remedial action and was negligent. *Id.* After receiving these requests, Reinstein agreed to Snyder's second and third requests, and revised the Assessment by removing one paragraph in the "Summary and Recommendations" section, in which Reinstein recommended that East Penn take certain actions. *Compare* P-123, *with* P-126. However, Reinstein was unwilling to honor Snyder's first request and state that his Assessment assumed that Cada had been honest with him. The Assessment was shared with certain East Penn employees, including Danner. Snyder Dep. 181:21-182:23 (Snyder testified that she informed Danner of some of the details because he was investigating Cada's allegations of harassment.).

After Cada returned to work following his three-day suspension in March, he spoke with several individuals, including Danner and Angstadt, about his allegations of harassment. Cada Dep. 182:15-191:15. Nevertheless, Cada testified that the situation at East Penn did not improve; rather, "[i]t just got worse." Cada Dep. 192:16-20. East Penn acknowledges that Cada and another co-worker thought things got worse in May and June 2014, but suggests it was due to Cada's increased reporting. Snyder Dep. 133:14-24. Snyder referred to Cada's behavior in May 2014 as "disruptive." Snyder Dep. 103:10-104:23. Also, in an email dated May 15, 2014, Danner wrote to Snyder that Cada was "spreading malicious rumors." Snyder Dep. 150:24-152:25; Danner Dep. 299:7-300:10. According to Cada, between March and June 2014, working with Wisser was "horrible." Cada Dep. 197:10-14. Cada testified that the constant name-calling and harassment occurred "every day" and he "knew, at that point, nobody was going to do anything about it." Cada Dep. 197:13-22. In June 2014, Cada went out on disability leave.

Cada testified that the day before he went out on disability leave, he again overheard his co-workers harassing and laughing at him, and that he reported this conduct directly to his supervisor, Matthew Gust, who "just looked at [him]." Cada Dep. 211:12-25. Cada testified that he was so distraught by the conditions at East Penn that one day when he tried to return to work, he began throwing up on the drive in and had to stop his vehicle. *Id.* at 213:22-214:2.

Cada voluntarily returned to Concern in June 2014, where he treated with Reinstein until September or early October. Cada Dep. 258:11-270:8, Ex. P-105, ECF No. 82-16; P-132. Sometime after September 10, 2014, Cada learned that Reinstein had revised the Back to Work Assessment after a copy of the revised/final Assessment was faxed to Cada's attorney. P-123, ECF No. 83-18. But, he did not know what changes had been made to the Assessment. Cada Dep. 281:18-283:6, Ex. B, ECF No. 60-2. Cada testified that although counseling with Reinstein had been helpful, Cada Dep. 261:16-23, 263:12-18, he felt "betrayed" after learning Reinstein revised the Back to Work Assessment at East Penn's request and that Reinstein "made it worse for [him]," Cada Dep. 268:3-269:12. Cada left Concern and began treating with another doctor. Cada Dep. 269:19-272:6. Cada decided that it was also time for him to leave East Penn. Cada Dep. 268:17-269:17. Cada resigned from East Penn on November 12, 2014.

IV. ANALYSIS

Cada has asserted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; of 42 U.S.C. § 1981; and of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963, based upon hostile work environment, constructive discharge, and race-based retaliation. He has also alleged violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213, and of 42 U.S.C. § 1985. Defendants have moved for summary judgment on all claims.

**A. Summary judgment is denied as to Cada's race-based and national original-based discrimination claims in Counts One, Two, and Three in light of disputed issues of material fact.**

In Counts One, Two, and Three, Cada claims that East Penn knowingly and purposefully engaged in race and national original discrimination in violation of Title VII, 42 U.S.C. § 1981, and the PHRA, creating a hostile work environment.[3] East Penn contends in its Motion for Summary Judgment that Cada cannot establish *respondeat superior* liability against East Penn because East Penn provided a reasonable avenue for him to complain and when Cada did complain, East Penn conducted a prompt investigation and took appropriate remedial action where warranted. *See Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (holding that where the alleged harassment did not occur by a supervisor, "employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action").

There are several factual disputes regarding these claims, including whether East Penn waited six years to take remedial action regarding the word "chink" on Cada's locker,[4] whether Cada reported racial slurs by his co-workers to his foreman Matthew Gust in late January, early

---

[3] To establish a hostile work environment claim, the plaintiff "must show that (1) he suffered intentional discrimination because of his national origin; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 U.S. Dist. LEXIS 1814, at *60-61 (E.D. Pa. Feb. 8, 2005). In deciding whether an environment is "hostile," the court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

[4] The parties dispute whether Cada reported that in 2008 someone had written the word "chink" on his locker, whether the word actually appeared on his locker, and whether this is the same locker Cada had in 2014 that was painted and sanded. Cada Dep. 56:3-57:16; 185:16-188:23, Ex. B. ECF No. 60-2; Snyder Dep. 79:16-89:6, 262:3-23.

February 2014, and whether Matthew Gust was a senior employee, to allow Cada to impute knowledge to East Penn. *See* Brief Supp. Mot. Summ. J. 14, ECF No. 59-1. There are also disputes of fact regarding whether the harassing behavior continued when Cada returned from his suspension in March 2014 and whether East Penn took "prompt" action. In light of these factual disputes, *inter alia*, summary judgment on Counts One, Two, and Three is denied.

> **B.** **Summary judgment is denied as to Cada's constructive termination claims in Counts Four, Five, and Six because there are disputed issues of material fact.**

Cada, through Counts Four, Five, and Six, asserts that East Penn unlawfully discriminated against him on the basis of race and national origin by constructively terminating him in violation of Title VII, 42 U.S.C. § 1981, and the PHRA. East Penn moves for summary judgment, arguing that Cada was not constructively discharged and, instead, resigned five months after going on disability leave. East Penn also asserts that all the alleged discriminatory acts were remedied by April 2014 and that Cada made no additional complaints after that time.

East Penn's own evidence conflicts with the last argument, as several East Penn employees testified that Cada's complaints increased in May 2014. *See* Snyder Dep. 133:14-24; Danner Dep. 299:7-300:10. Additionally, Cada testified that the harassment grew worse in March, April, and May, that Wisser continued to harass and call him names, and that the day before he went out on disability leave, when he reported the harassment to his supervisor Matthew Gust, Gust "just looked at [him]." Cada Dep. 211:12-25. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987) ("There is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment."). There is also evidence that Cada's harassment dates back to 2008 and a dispute as to whether it took six years for East Penn to remove the word "chink" from Cada's locker. Cada

9
021618

has also presented evidence that the conditions were so bad at East Penn that he became physically ill upon the thought of returning to work and had to seek medical treatment for anxiety. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (holding that "to establish a constructive discharge, a plaintiff must show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign" (internal quotations omitted)); *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 556-57 (E.D. Pa. 2017) (finding that the plaintiff adequately alleged a constructive discharge claim based on her continued harassment for over a year, which resulted in depression and anxiety). In light of these allegations and disputed facts, summary judgment on Counts Four, Five, and Six is denied.

    **C.**    **Summary judgment is denied as to Cada's retaliation claims in Counts Seven, Eight, and Nine based on disputed issues of material fact.**

In Counts Seven, Eight, and Nine, Cada avers that East Penn (by subjecting him to a hostile work environment on account of his race and national original, by refusing to follow policy regarding his complaints, by unfairly disciplining him, and by directing Concern to alter the Back to Work Assessment) unlawfully retaliated[5] against him in violation of Title VII, 42 U.S.C. § 1981, and the PHRA. East Penn moves for summary judgment, arguing that Cada fails to allege any conduct separate and apart from the underlying allegations of harassment and, alternatively, that Cada cannot establish that East Penn took an adverse action against him.

This Court finds that Cada has provided evidence of separate retaliatory conduct and adverse action, and that disputed issues of fact preclude the entry of summary judgment. Cada

---

[5]     "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Selvato v. SEPTA*, 658 Fed. Appx. 52, 56 (3d Cir. 2016) (internal quotations omitted).

has presented evidence that he complained about the race-based harassment to Gust prior to the incident with Wisser, which East Penn disputes, and that while he was immediately suspended and sent for anger management counseling, Wisser was not disciplined until approximately two months later. Additionally, as discussed in the previous section, there are disputed issues of fact as to whether Cada was constructively discharged after informing East Penn of the continuous harassment. Summary judgment on these claims is denied.

### D. Summary judgment is denied as to Count X[6] due to the presence of genuine disputes of material fact.

In Count X, Cada alleges that East Penn ordered a prohibited medical examination and made an unlawful inquiry in violation of § 12112(d)(4)(A) of the ADA.[7] In its Motion for Summary Judgment, East Penn focuses its attention on whether the mandated anger management counseling with Concern and the information it received in the Back to Work Assessment violated the statute. However, in addition to responding to these issues, Cada asserts that while he was out on disability leave, Danner obtained confidential information from Cada's short-term disability carrier (Medicus). In reply, East Penn challenges Cada's characterization of Danner's testimony on this point.

At his deposition, Danner was questioned regarding an email he received from Cynthia Swan, the Disability Claim Coordinator for East Penn, stating "Here are the notes on Francis from Medicus" and attaching a one-page medical report. *See* Ex. P-95, ECF No. 74-35. Danner

---

[6] Cada switches from the use of Arabic numerals in Counts One through Nine to the use of Roman numerals for Counts X through XIII.

[7] This section of the ADA provides:
> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A) ("Prohibited examinations and inquiries").

testified that he had no memory of this email or of requesting Cada's medical reports and, further, that he would not normally seek this type of information. *See* Danner Dep. 346:12-358:10, Ex. H-2, ECF No. 60-9. Considering the wording of Swan's email, however, this Court finds that there are genuine disputes of material fact that preclude the entry of summary judgment on this claim because a reasonable jury could conclude that Swan sent the medical notes in response to an inquiry[8] from Danner. Also, based on Danner's testimony that he would not normally seek such information, there is an issue of fact as to whether the inquiry was job-related and consistent with business necessity.

> E. **Summary judgment is granted in favor of Defendants on Count XI because the record is devoid of any evidence of a violation of § 1985.**

Count XI is asserted against both Defendants. Cada alleges that East Penn and Concern engaged in a conspiracy to obstruct justice by altering Reinstein's Back to Work Assessment, which led to Cada's constructive discharge and caused emotional distress. Cada avers that neither East Penn nor Concern engaged in such conduct with previous employees or patients, that their actions were intended to deprive him of equal protection, and that their conduct violated 42 U.S.C. § 1985(3).

East Penn argues that the evidence establishes that there was no agreement between it and Concern or Reinstein to revise the Assessment, which is a required element of Cada's case. Additionally, East Penn asserts that there is no evidence that Cada was injured as a result of the revised Assessment. Concern also seeks summary judgment on Count XI, echoing East Penn's arguments and further asserting that there is no evidence that Concern was motivated by animus against a class of people to which Cada was a member. In response to each motion, Cada asserts

---

[8] This Court recognizes that § 12112(d)(4) prohibits the making of "inquiries," and not the mere receipt of medical information.

12
021618

that the § 1985(3) conspiracy was played out in the emails between East Penn and Concern. Cada further alleges that at the time East Penn and Concern agreed to revise the report, East Penn was the defendant in an employment discrimination lawsuit brought by another former employee, who East Penn also directed undergo a back-to-work assessment at Concern. *See Kamau v. East Penn Mfg. Co.*, No. 5:11-cv-05317 (E.D. Pa. filed Aug. 22, 2011). He asserts that a jury could conclude that the conspiracy was formed for the purpose of altering the course of the *Kamau* litigation in violation of §1985(2).

This Court addresses the § 1985(3) claim first. "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). To state a claim under §1985(3), a plaintiff must "prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).

"[T]he conspiracy provision of § 1985(3) provides a cause of action under rather limited circumstances." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 804-05 (3d Cir. 2001). A "plaintiff must show, *inter alia*, (a) that a racial or other class-based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (c) that that right was

consciously targeted and not just incidentally affected." *Id.* at 805 (internal quotations omitted). Moreover, "[i]t is well established that § 1985(3) does not itself create any substantive rights; rather, it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." *Id.* at 805 (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)). The Supreme Court has recognized only two rights as protected under § 1985(3): the Thirteenth Amendment rights to be free from involuntary servitude and to interstate travel. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993).

Cada does not contend that East Penn and Concern conspired to deprive him of either of these two protected rights. Furthermore, to the extent that this Court has found disputed issues of fact as to Cada's Title VII, § 1981, and PHRA claims, none of the rights underlying these claims can form the basis of a § 1985(3) claim. *See Novotny*, 442 U.S. at 378 ("conclud[ing] that § 1985(3) may not be invoked to redress violations of Title VII"); *Rose v. Rothrock*, No. 08-3884, 2009 U.S. Dist. LEXIS 37032, at *16 (E.D. Pa. Apr. 29, 2009) (holding that statutory rights pursuant to § 1981 cannot be the basis of a § 1985(3) claim (citing *Brown*, 250 F.3d at 806)).

Moreover, Cada has offered no evidence of any racial or national origin-based discriminatory animus by Concern or Reinstein. *See Lei Ke v. Drexel Univ.*, 645 Fed. Appx. 161, 166 (3d Cir. 2016) (affirming the district court's decision granting summary judgment in favor of the defendants because there was no record evidence of any discriminatory animus). Cada's assertion that the class-based animus can be "satisfied by the conspiracy's announced intention to interfere with any potential future litigation based on race-based discrimination brought by other, similarly situated individuals," Resp. East Penn's Mot. Summ. J. 32, is wholly

unsupported by facts. Nothing in the requested changes[9] or the limited revisions[10] to the Assessment provides any evidence of racial or other class-based invidious discriminatory animus, let alone any intention to deprive Cada of a right guaranteed by the Constitution. Summary judgment is granted in Defendants' favor on Cada's § 1985(3) claim.

Cada also seeks to recover under § 1985(2), which proscribes two or more persons from conspiring

> to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . .; or . . . for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

---

[9] As discussed previously, Snyder requested three changes to Reinstein's Assessment. As to the first two requests, Snyder explained her concern that Reinstein only took Cada's version of events into account, but that East Penn's investigation of the February incident revealed that Cada had threatened a co-worker and that another employee was fearful of Cada, which is why he was referred for anger management. Snyder stated that she wanted the Assessment to reflect that the described events were based only on one side of the story and that the description and Reinstein's recommendations assumed Cada's truthfulness. As to the third requested change, Snyder stated that she felt that it appeared from the Assessment that East Penn was negligent even though Cada had allegedly not reported all the alleged incidents of racial discrimination to East Penn. Regardless of whether Snyder's stated reasons for the revisions are true, Cada has failed to offer any evidence refuting this explanation and to otherwise support his claim of a racial or class-based discriminatory animus.

[10] Reinstein agreed to remove one paragraph from the Assessment, which contained his recommendation to East Penn as to what remedial action East Penn should take. Reinstein did not, however, agree to amend the Assessment to reflect that the Assessment was based on Cada's truthfulness. Reinstein's unwillingness to agree to make all the requested revisions also refutes Cada's claim of a conspiracy. *See* Emails (indicating that Snyder and Reinstein "agreed to disagree" and that Reinstein was unwilling to make all the changes requested by East Penn); Snyder Dep. 273:7-13 (Snyder testified "I didn't know what to expect," in response to a question as to whether she expected to get pushback from Concern about revising the report.); Reinstein Dep. 128:8-20 (Reinstein testified that based on his conversation with Snyder, her characterization that "Adam and I agreed to disagree" was accurate.). This Court observes that Concern and East Penn agreed that East Penn would stop sending its employees to Reinstein for assessments, but again, this agreement does not suggest invidious discriminatory animus or intent to deprive Cada of a right guaranteed by the Constitution.

42 U.S.C. § 1985(2).[11] As to a claim under the first part of subsection two, Cada has not presented any evidence to support his broad assertion that he was a "potential witness" in the *Kamau* litigation, or that Concern, who was not a defendant in that case, had any intent to deter Cada's testimony. Furthermore, according to the docket in *Kamau*, summary judgment was entered in favor of East Penn on February 28, 2013, and the case was closed. *Kamau*, No. 5:11-cv-05317 at ECF Nos. 35-36. Although Kamau filed an appeal, it had been submitted for consideration on March 4, 2014. *Id.* at ECF No. 39 (Order of the Third Circuit Court of Appeals affirming the entry of summary judgment dated March 20, 2014). The emails that Cada cites as proof of his claim were exchanged in mid-March 2014, which was after Kamau's case had been dismissed by the district court and after the matter was submitted for consideration before the appellate court. As to a claim under the latter part of subsection two cited above, there is no evidence Concern had any intent to deny Cada the equal protection of the laws, or to injure him for lawfully enforcing the right of any person, or class of persons, to the equal protection of the laws. Consequently, summary judgment is also granted in favor of Defendants on Cada's § 1985(2) claim, and Count XI is dismissed.

> **F.  Summary judgment is denied as to Count XII because there is sufficient evidence to send the question of breach to a jury, but Count XIII is dismissed because it is duplicative of Count XII.**

In Count XII (negligence) and Count XIII (breach of fiduciary duty), Cada asserts state-law claims against Concern, alleging that it breached its duty to Cada by altering the March 2014 Back to Work Assessment at East Penn's request, that Concern breached its duty by allowing

---

[11]  Defendants challenge the claim under § 1985(2) as an untimely new legal theory. *See Carr v. Gillis Associated Indus.*, 227 Fed. Appx. 172, 176 (3d Cir. 2007) (affirming the district court's decision to reject the plaintiff's new theory as untimely). But, while this Court agrees that Cada did not mention subsection two in his pleadings, he did allege an "obstruction of justice" in Count XI. Further, as Cada points out in his sur-reply, the remedy for a § 1985 claim is found in subsection three. Thus, the Court will not dismiss the § 1985(2) claim as untimely.

Reinstein to serve as both an Employee Assistance Program ("EAP") counselor and treating therapist to Cada, as it was a conflict of interest, and that Concern breached its duty by failing to advise Cada of the conflict of interest. Cada alleges that he suffered damages including the loss of his job and emotional distress.

Concern moves for summary judgment on both claims, arguing that it had no duty to inform Cada of the revisions to the Back to Work Assessment because the actions were purely administrative and that the alleged harm was not foreseeable. Concern asserts that Reinstein initially included gratuitous recommendations in the Assessment, which he agreed to remove because they did not pertain to the services requested by East Penn. Concern further contends that the harm was not foreseeable in March 2014 and there is no evidence of injury resulting from the amendment. Concern also argues that there was no conflict of interest because at the time he began treating Cada privately, he was no longer working for East Penn. Finally, Concern asserts that the breach of fiduciary duty claim is duplicative of the negligence claim.

"In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993). Additionally, the court must determine whether the defendant "could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act." *Id.* (quoting *Dahlstrom v. Shrum*, 84 A.2d 289, 290-91 (Pa. 1951)). "The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event." *Id.*

17
021618

After considering the evidence in the light most favorable to Cada, this Court finds that regardless of whether Reinstein/Concern owed a duty of care to Cada in March 2014 and regardless of whether it was a breach of this duty to revise the Assessment, there was a duty owed to Cada beginning in June 2014, when he started private counseling sessions with Reinstein.  Cada's alleged emotional distress was foreseeable at this time given his history of anxiety and the fact that he was out on disability leave because he was allegedly too stressed by the harassment at East Penn to continue working.  However, whether Reinstein's failure to disclose to Cada that he revised the Back to Work Assessment constitutes a breach and whether such a breach was the proximate cause of Cada's emotional distress is a question for the jury. *See id.* at 1372 (concluding that the "determination whether the College in fact breached this duty is a question of fact for the jury"); *Vanesko v. Marina Dist. Dev. Co., LLC*, 38 F. Supp. 3d 535, 541-42 (E.D. Pa. 2014) (explaining that the Supreme Court of Pennsylvania has "held that the question of whether there is a breach of duty is a question of fact typically reserved for the jury" (citing *Emerich v. Phila. Ctr. for Human Dev., Inc.*, 720 A.2d 1032, 1044 (Pa. 1998)).  In light of Cada's testimony that upon learning of the revision, he felt Reinstein had betrayed him and made his condition worse, there is also a jury question as to whether Reinstein's failure to disclose the revision to Cada before beginning additional counseling sessions was the proximate cause of Cada's emotional distress.  *See Vaskas v. Kenworth Truck Co.*, No. 3:10-CV-1024, 2013 U.S. Dist. LEXIS 2903, at *34-35 (M.D. Pa. Jan. 8, 2013) ("Because the issue of proximate cause is inherently fact-based, causation is generally a question of fact for the jury.").  Concern's Motion for Summary Judgment on this Count is denied.[12]

---

[12]     Because at least one theory of relief supporting the negligence claim survives summary judgment, this Court need not address Cada's alternative factual theories in Count XII.

18
021618

Finally, because Counts XII and XIII contain essentially the same allegations, the Court consolidates both claims into Count XII and dismisses Count XIII. *See Burdyn v. Old Forge Borough*, No. 3:12-CV-2236, 2016 U.S. Dist. LEXIS 137142, at *47 (M.D. Pa. Oct. 3, 2016) (rejecting the plaintiff's "attempt to merely re-frame her negligence claim in a different light in order to bring two counts against [the defendant] as opposed to one" and consolidating the two claims into the negligence claim because there was no material difference between the two claims). To the extent that Count XIII is premised on 49 Pa Code § 47.62, the allegations contained therein are also in the negligence claim at Count XII. *See id.*

## V. CONCLUSION

There are disputed facts precluding the entry of summary judgment on Counts One through X and on Count XII. As to Count XI, Cada has failed to offer any evidence that Reinstein or Concern had any racial or national-origin based discriminatory animus, that either one conspired with East Penn to deprive him of the limited protected rights under § 1985(3) or of equal protection of the laws as required under § 1985(2). Thus, judgment is entered in favor of both Defendants on Count XI and this claim is dismissed. Count XIII is also dismissed because it is cumulative of Count XII and any allegations contained therein are subsumed in Count XII. The Motions for Summary Judgment are denied in all other respects.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge